NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2266-12T3

RICHARD CAPORUSSO and JILL
CAPORUSSO, CAROLINE GLOCK and
OTHERS SIMILARLY SITUATED;
JEFFREY S. POLLACK, M.D.,

    Plaintiffs-Appellants,

v.

NEW JERSEY DEPARTMENT OF HEALTH
AND SENIOR SERVICES,

    Defendant-Respondent,

and

MARY E. O'DOWD, MPH, OR
SUCCESSOR COMMISSIONER OF
THE NEW JERSEY DEPARTMENT OF
HEALTH AND SENIOR SERVICES;
JOHN H. O'BRIEN, JR., OR
SUCCESSOR DIRECTOR OF THE
NEW JERSEY COMPASSIONATE USE
MEDICAL MARIJUANA PROGRAM,

    Defendants.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 13, 2014**
>
> **APPELLATE DIVISION**

Argued September 18, 2013 – Decided January 13, 2014

Before Judges Lihotz, Maven and Hoffman.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-822-12.

                    Anne M. Davis and William H. Buckman argued
                    the cause for appellants.

                    Michael J. Kennedy, Deputy Attorney General,
                    argued the cause for respondent (John J.
                    Hoffman, Acting Attorney General, attorney;
                    Melissa H. Raksa, Assistant Attorney General,
                    of counsel; Mr. Kennedy, on the brief).

        The opinion of the court was delivered by

LIHOTZ, J.A.D.

        Plaintiffs Richard Caporusso, Jill Caporusso, Caroline

Glock and Jeffrey S. Pollack, M.D., filed this action against

defendants, the New Jersey Department of Health and Senior

Services, which is now known as the Department of Health (DOH);[1]

Mary E. O'Dowd, MPH, DOH's Commissioner (Commissioner); and John

H. O'Brien, Jr., the Director of the Medicinal Marijuana Program

(MMP).[2]  Plaintiffs seek "injunctive and/or declaratory relief"

to effectuate the New Jersey Compassionate Use Medical Marijuana

Act (the Act), N.J.S.A. 24:6I-1 to -16.  The Act legalizes the

production, sale, and consumption of medicinal marijuana

---

[1]    The Department of Health and Senior Services (DHSS) was
reorganized and renamed the Department of Health (DOH) pursuant
to L. 2012, c. 17, effective June 29, 2012.  We recognize the
Act initially referred to DHSS as the responsible agency and
note this matter was filed after June 29, 2012.  Accordingly, we
refer to the agency as DOH throughout our opinion.

[2]    In our opinion, we collectively refer to defendants as DOH.

prescribed for specific patients diagnosed with defined debilitating medical conditions.

After reviewing plaintiffs' complaint, the trial judge concluded the Law Division lacked jurisdiction to consider the substantive claims and transferred the matter to this court, pursuant to Rule 2:2-3(a)(2), which provides "appeals may be taken to the Appellate Division as of right . . . to review final decisions or actions of any state administrative agency."[3] Rule 2:2-3(a)(2) contemplates a

> proceeding to review the action or inaction of a state administrative agency [shall] be by appeal to the Appellate Division . . . . Therefore, the Appellate Division has exclusive jurisdiction to consider a claim of state administrative agency inaction. If our determination of such a claim requires the development of a factual record, we can remand to the agency for a statement of reasons, for further action by the agency, or can permit the Law Division to create a record and make fact-finding.
>
> [Hosp. Ctr. at Orange v. Guhl, 331 N.J. Super. 322, 329-30 (App. Div. 2000) (internal quotation marks and citations omitted) (alterations in original).]

Following our review, we conclude plaintiffs have set forth a basis to compel the DOH to complete its reporting requirements

---

[3] The transcript of this proceeding has not been supplied to this court.

as set forth in the Act.  However, we deny all other requests for relief.

I.

The Act was adopted on January 18, 2010 and originally scheduled to go into effect on July 1, 2010, L. 2009, c. 307, § 19.  At DOH's request, the Legislature amended the Act to delay the effective date to October 1, 2010.  See L. 2010, c. 36, § 1.  Stated legislative findings note that although marijuana is included as a controlled dangerous substance, as defined in N.J.S.A. 24:21-2, "[c]ompassion dictates that a distinction be made between medical and non-medical uses of marijuana."  N.J.S.A. 24:6I-2(e).  The Act broadly seeks "to protect from arrest, prosecution, property forfeiture, . . . criminal and other penalties, those patients who use marijuana to alleviate suffering from debilitating medical conditions, as well as their physicians, primary caregivers, and those who are authorized to produce marijuana for medical purposes."  Listing the specific debilitating medical conditions to which the use of medicinal marijuana is permitted, N.J.S.A. 24:6I-3, the Act directs DOH to establish a registry of qualifying patients and their caregivers and issue registry identification cards. N.J.S.A. 24:6I-4(a).  Further, the Act proposes to license

alternative treatment centers (ATC) to cultivate and distribute medicinal marijuana.  N.J.S.A. 24:6I-7.

The Act includes few details for its effectuation, but rather, authorizes DOH to promulgate a body of regulations in consultation with the Department of Law and Public Safety, regarding the operation, monitoring, inspection, licensure, and security of permitted providers; pickup, delivery, and distribution of marijuana by third parties; the nature of the products sold and the quantity permitted for distribution; provisions allowing registered primary caregivers to handle a qualifying patient's medical marijuana; and qualifications and the registration of patients to receive medicinal marijuana. N.J.S.A. 24:6I-4, 7(a), 7(b), 7(i), 16(a).

DOH discharged its rulemaking responsibility by proposing rules for the MMP on November 15, 2010.  42 N.J.R. 2668(a) (Nov. 15, 2010).[4]  The Legislature found the proposed rules, in part, were inconsistent with the Act's intention, and passed a concurrent resolution identifying provisions needing modification.  S. Res. 130, 214th Leg. (N.J. 2010) and Assemb. Res. 151, 214th Leg (N.J. 2010).  See also 43 N.J.R. 340(a) (Feb. 22, 2011).  The concurrent resolution directed DOH to

_____

[4]   On October 6, 2010, DOH initially posted draft proposed implementation rules on its website.

amend or withdraw portions of regulations it identified as non-conforming, within thirty days. More specifically, the concurrent resolutions identified as non-conforming the imposed limitation on debilitating conditions treatable by medicinal marijuana, the separation of ATC activities for cultivation and distribution of marijuana, and the limit imposed on the level of delta-9-tetrahydrocannabinol (THC) contained in marijuana products sold. DOH issued modified rules in February 2011. 43 N.J.R. 340(a). A second concurrent resolution, S. Res. 151, 214th Leg (N.J. 2011) was introduced on April 11, 2011, which reaffirmed those proposed rules found to deviate from the Act's intent. The Legislature never adopted that resolution. The MMP regulations were finalized and adopted on November 23, 2011, effective December 19, 2011. 43 N.J.R. 3335(a) (Dec. 19, 2011), appear at N.J.A.C. 8:64-1 to -13.11.

Pending finalization of the rules, DOH published a request for applications for the first non-profit ATC operators. Six applicants were selected to operate proposed ATCs that were geographically spaced throughout the state, with two ATCs in the northern, central and southern regions of New Jersey.

The Act includes a provision instructing: DOH "shall report to the Governor, and the Legislature . . . no later than one year after the effective date of this act, on the actions

taken to implement the provisions of this act[,]" and annually thereafter. N.J.S.A. 24:6I-12(a)(1), (2). The Commissioner was also mandated to report findings regarding the sufficiency of the number of ATCs and other issues within two years of the Act's effective date and every two years thereafter. N.J.S.A. 24:6I-12(c).

To date, three ATCs have opened: Greenleaf Compassion Center in Montclair, Essex County, on October 16, 2012; Compassionate Care Foundation in Egg Harbor Township, Atlantic County, on October 28, 2013; and Garden State Dispensary, formerly Compassionate Care Centers of America, Inc. in Woodbridge, Middlesex County, on November 22, 2013.[5] The respective websites of the other three chosen ATC applicants suggest various stages of progress toward opening. Compassionate Sciences, Inc., located in Bellmawr, Camden County, appears to be closest to commencement of operations.[6]

---

[5] See State of N.J., Dep't of Health, Medical Marijuana Program, http://www.state.nj.us/health/medicalmarijuana (last viewed Dec. 24, 2013) (providing links to news and announcements regarding medical marijuana program); Scott Gacek, Report: NJ's Woodbridge Medical Marijuana Dispensary to Open Tomorrow, The Daily Chronic (Nov. 21, 2013), http://www.thedailychronic.net/ 2013/26444/report-njs-woodbridge-medical-marijuana-dispensary-to-open-tomorrow.

[6] See Compassionate Sciences Building Advanced Medical Marijuana Treatment Facility in Bellmawr, Market Wired (Aug. 29, 2013), http://www.marketwired.com/press-release/compassionate-

(continued)

Breakwater Alternative Treatment Center lists its location as Central New Jersey[7] and Harmony Foundation lists an address in Cliffside Park, but does not yet suggest it is accepting patients.[8]

Plaintiffs' five-count amended complaint conflates requests for equitable and legal relief and demands a jury trial.[9] Plaintiffs Richard Caporusso and Caroline Glock are qualified patients under the Act, who claim they have been denied access to medical marijuana because of DOH's failure to implement the program as mandated. Plaintiff Jeffrey Pollack, M.D., alleges he sought to provide written certifications for his patients he believed suffered qualified debilitating medical conditions and found the requirements to do so were burdensome and time-consuming.

---

(continued)
sciences-building-advanced-medical-marijuana-treatment-facility-bellmawr-1825731.htm.

[7] See Breakwater Alternative Treatment Center, http://www.breakwateratc.org (last viewed Dec. 17, 2013).

[8] See Harmony Foundation, http://www.harmonyfoundationmmjnj.com/contactus.aspx (last viewed Dec. 17, 2013).

[9] The original complaint and jury demand were filed on April 4, 2012, but not served. An amended complaint was filed, with an order to show cause and counsel's certification, on October 10, 2012.

In count one, Caporusso and Glock generally assert they suffered a denial of due process under the New Jersey Constitution.[10] In count two, plaintiff Jill Caporusso, Richard's wife, asserts derivative claims for loss of services. Count three asserts DOH's willful, intentional, wanton, malicious, reckless, or grossly negligent actions, have denied Caporusso and Glock access to medical marijuana which amounts to an intentional tort. Count four alleges DOH negligently failed to effectuate its duty to implement the Act and count five identifies the injunctive relief sought "to see to it that the will of the [L]egislature is carried out." In a single prayer for claims of relief, plaintiffs seek an order:

1. Requiring [the Commissioner] to see to it that the statute is properly implemented and the scheme contained in the [Act] . . . is obeyed[;]

2. Compelling . . . [the] Director of the [MMP] to promptly comply with the [Act] and the [l]egislative directives in [the Act] by:

   A. Immediately establishing a workable program eliminating the unnecessary and/or overly burdensome hurdles to physicians willing to prescribe marijuana in accordance with the [Act];

---

[10] Glock, who suffered from lung cancer, passed away on October 25, 2012.

B. Completing background investigations on all six (6) [ATCs'] entire board members, staff and interested parties within [thirty] days;

C. Approving or denying each of the six (6) selected ATC applicants within [thirty] days;

D. Rejecting any disqualified applicant and appointing another ATC operator in the event that an ATC applicant is disqualified.

E. Submitting the complete report as mandated by the [Act], on their actions taken to implement the program to the Governor and Legislature within [thirty] days.

3. Declaring that the [MMP] regulations as promulgated by the [DOH] are ultra vires;

4. Declaring that the MMP regulations as promulgated by the DOH are unconstitutional;

5. Appointing the Coalition for Medical Marijuana of New Jersey . . . as [m]onitor, to oversee and report to the [c]ourt on actions taken by DOH to implement the MMP;

6. Compelling DOH to revise the MMP regulations under consultation and in conformity with the recommendations drafted by [the Coalition for Medical Marijuana of New Jersey] within [sixty] days;

7. Providing [the Coalition for Medical Marijuana of New Jersey] shall be compensated at a reasonable rate out of the MMP budget;

8. Granting qualified and registered patients a defense from criminal prosecution that they otherwise would have been afforded had they possessed an ID card;

9. Permitting patients to immediately petition the DOH to add qualifying conditions pursuant to the [Act].

Finally, plaintiffs' ad damnum clause seeks "such other relief as the [c]ourt deems equitable and just[,]" along with demands for compensable and punitive damages, counsel fees, costs and pre- and post-judgment interest. It is noted, certifications and plaintiffs' merits brief also discuss prior document requests, alluding to violations of the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13.

In lieu of filing an answer, DOH moved to dismiss the complaint. The Law Division judge considered the matter on January 24, 2013. The judge declined to review the merits of the various claims, determining jurisdiction rested with this court, and transferred the case for our review pursuant to Rule 2:2-3(a)(2).

The complaint is muddled and lacks specificity regarding several alleged causes of action. However, we discern four types of issues presented: (1) DOH's inaction in implementing

11                                    A-2266-12T3

identified provisions of the Act requires an order compelling it to act; (2) due process violations warrant compensatory relief; (3) DOH's inaction amounts to intentional torts and/or negligence requiring an award of damages; and (4) DOH's noncompliance with several OPRA requests must be remedied.

We easily dispose of the latter two categories of claims. We conclude plaintiffs' pleadings are insufficient to allow consideration under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to :12-3 and OPRA.

Although not referenced in the complaint, claims against the State must meet the requirement of the TCA, which states: "Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." N.J.S.A. 59:2-1(a). Accordingly, immunity generally applies and "liability is the exception." Fluehr v. City of Cape May, 159 N.J. 532, 539 (1999). See also Dickson v. Twp. of Hamilton, 400 N.J. Super. 189, 195 (App. Div.) ("'[T]he public policy of this State is that public entities shall be liable for their negligence only as set forth in the [TCA].'" (quoting Pico v. State, 116 N.J. 55, 59 (1989))), certif. denied, 196 N.J. 461 (2008).

"Consistent with its goals of restricting governmental liability in tort, the TCA requires that a claim be presented to a public agency within ninety days after accrual of the cause of action." Greenway Dev. Co. v. Borough of Paramus, 163 N.J. 546, 552 (2000) (citing N.J.S.A. 59:8-8). "Two of the primary purposes advanced by the notice requirement are: (1) 'to expedite investigation with the hope of reaching non-judicial settlement'; and (2) 'to protect the public entity's access to current information about the incident giving rise to the claim.'" Ibid. (quoting Reale v. Twp. of Wayne, 132 N.J. Super. 100, 109 (Law Div. 1975)). The record presents no compliance with the TCA's notice requirement, a lapse that is fatal to recovery. See N.J.S.A. 59:8-8(a).

As to the claimed OPRA violations, we observe plaintiffs' complaint fails to allege a basis for relief under OPRA. Further, we find any challenge based on said requests is untimely.

The record reveals OPRA requests were filed by counsel before and after plaintiffs filed their April 4, 2012 complaint. Assuming the OPRA requests were made on plaintiffs' behalf, which is not clear from the record,[11] the document demands submitted prior to initiating legal action were dated November

---

[11] The OPRA requests were filed by Anne M. Davis individually.

23 and 30, 2011, December 20, 2011, and February 10, 2012. The assertions of OPRA non-compliance arising from these requests should have been filed within forty-five days of DOH's alleged lapse. See Mason v. City of Hoboken, 196 N.J. 51, 57 (2008) ("OPRA actions have a 45-day statute of limitations, consistent with actions in lieu of prerogative writs."). See also R. 4:69-6. The claims will not be reviewed.

Accordingly, the issues for our consideration are narrowed. We consider whether DOH has failed to comply with the Legislature's directives set forth in the Act and, if so, whether relief is available through this court. Also, we consider whether an actionable constitutional challenge has been presented.

## II.

### A.

Included among the common law prerogative writs is mandamus, which is a writ directing government officials to carry out required ministerial duties. In re Application of LiVolsi, 85 N.J. 576, 594 n.18 (1981) (citing McKenna v. N.J. Highway Auth., 19 N.J. 270, 275-76 (1955)). A court-issued writ of mandamus to a government official "'commands the performance of a specific ministerial act or duty, or compels the exercise of a discretionary function, but does not seek to interfere with

or control the mode and manner of its exercise or to influence or direct a particular result.'" In re Resolution of State Comm'n of Investigation, 108 N.J. 35, 45 n.7 (1987) (quoting Switz v. Middletown Twp., 23 N.J. 580, 587 (1957)). "Former prerogative writs have been superseded" by Article VI, Section V, paragraph 4 of the 1947 New Jersey Constitution, such that actions in lieu of prerogative writs are now governed by Rule 4:69-1. McKenna, supra, 19 N.J. at 274.[12] See also Guhl, supra, 331 N.J. Super. at 333 ("When our 1947 Constitution was prepared, pains were taken to insure not only that the court's prerogative writ jurisdiction would remain intact, but also that the manner of its exercise would be greatly simplified [N.J. Const.] art. VI, sec. 5, [paragraph] 4)."). In this regard, it is well-settled this court's "jurisdiction extends not only to State agency action, but also agency inaction." Pressler & Verniero, Current N.J. Court Rules, comment 3.1 on R. 2:2-3(a)(2) (2014).

---

[12]    The "Court recognized that the creation of the in lieu proceeding by the Constitution of 1947 was not intended to discard 'the substantive law of the former prerogative writs as a means of safeguarding individual rights against public officials and governmental bodies,' but was meant to avoid the 'defects of procedure that led to criticism.'" Brunetti v. New Milford, 68 N.J. 576, 585-86 (1975) (quoting Ward v. Keenan, 3 N.J. 298, 308 (1949)).

Understanding the matter is properly before this court, we emphasize our authority to compel agency action is exercised sparingly, as courts are ill-equipped to micromanage an agency's activities. Sod Farm Assocs. v. Twp. of Springfield, 366 N.J. Super. 116, 130 n.10 (App. Div. 2004). Rather, we accord wide discretion to administrative agencies which are to decide "how best to approach legislatively assigned administrative tasks." In re Failure by the Dep't of Bank. & Ins., 336 N.J. Super. 253, 262 (App. Div.), certif. denied, 168 N.J. 292 (2001). We also remain mindful separation of powers generally grants control of policy-making to the Governor and Legislature. United States Trust Co. v. State, 69 N.J. 253, 259 (1976).

An individual's challenge to the inaction of a State agency can seek to compel only clearly "mandated ministerial obligations," which do not require an evaluative judgment in the exercise of discretion. Equitable Life Mort. & Realty Inv. v. Div. of Taxation, 151 N.J. Super. 232, 238 (App. Div.), certif. denied, 75 N.J. 35 (1977).

> Mandamus issues "to compel the performance, in a specified manner, of ministerial duties so plain in point of law and so clear in matter of fact that no element of discretion is left as to the precise mode of their performance, but as to all acts or duties depending upon a jurisdiction to decide questions of law or to ascertain matters of fact, on the part of the officer or body at whose hands their

performance is required, mandamus will not lie."

[Switz, supra, 23 N.J. at 588 (quoting Mooney v. Edwards, 51 N.J.L. 479, 481 (Sup. Ct. 1889)).]

A ministerial duty is one that "is absolutely certain and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode and occasion of its performance with such certainty that nothing remains for judgment or discretion." Ivy Hill Park Apartments v. N.J. Prop. Liab. Ins. Guar. Ass'n, 221 N.J. Super. 131, 140 (App. Div. 1987), certif. denied, 110 N.J. 188 (1988).

In other words, "mandamus is an appropriate remedy '(1) to compel specific action when the duty is ministerial and wholly free from doubt, and (2) to compel the exercise of discretion, but not in a specific manner.'" Vas v. Roberts, 418 N.J. Super. 509, 522 (App. Div. 2011) (quoting Loigman v. Twp. Comm. of Middletown, 297 N.J. Super. 287, 299 (App. Div. 1997)).

Here, plaintiffs seek an order compelling DOH to: eliminate "the unnecessary and/or overly burdensome hurdles to physicians willing to prescribe marijuana in accordance with the [Act]"; complete background investigations on board members, staff and interested parties of approved ATCs within thirty days; approve or reject the licensure of the remaining three selected ATCs within thirty days and select different ATC applicants to

17

replace those rejected; and submit a report to the Legislature and the Governor as mandated by N.J.S.A. 24:6I-12(a)(1) within thirty days.  We must separately examine each of these requests.

Regarding the regulatory scheme adopted for physician certification of eligible MMP patients, plaintiffs allege the regulations are "unnecessary and/or overly burdensome."  To support their claim, plaintiffs rely on certifications by Jeffrey S. Pollack, M.D. and Vanessa Waltz.  Dr. Pollack states he registered two patients and found the process "burdensome" because he was required to provide patient-specific information not readily accessible in his patient's file, such as the patient's full middle name, and asserts such information is not mandated when he writes a prescription for pharmaceuticals.  In registering his second patient, Dr. Pollack reduced his time expenditure by one-third, to twenty minutes, which he still found excessive.  He suggests the process is a "nuisance."

Waltz, a member of the Coalition for Medical Marijuana New Jersey and not a physician, conducted "a non-scientific survey of physicians registered with the [DOH] to recommend medical marijuana to patients."  From this effort she concludes physicians are reluctant to participate in the MMP because she believes the DOH's website is ambiguous.

When an agency violates the express policy of its enabling act, the agency action may be deemed arbitrary and capricious. Pub. Serv. Elec. & Gas Co. v. N.J. Dep't of Envtl. Prot., 101 N.J. 95, 103 (1985) (noting that when determining whether action is arbitrary and capricious, a court may consider "whether the agency action violates the enabling act's express or implied legislative policies"). Intervention is warranted when the action is unsupported or unaccompanied by reasonable explanation. Ibid. However, a writ of mandamus, or its current legal equivalent, is not available to an aggrieved party seeking review of agency action. "The writ of mandamus lay not to review but to compel." McKenna, supra, 19 N.J. at 276. (internal citation omitted).

"[A] strong presumption of reasonableness" attends an agency's exercise of its statutorily delegated duties, which "is even stronger when the agency has delegated discretion to determine the technical and special procedures to accomplish its task." In re Application of Holy Name Hosp. for a Certificate of Need, 301 N.J. Super. 282, 295 (App. Div. 1997) (internal quotation marks and citation omitted). Moreover, "[a]gency rulemaking is not a ministerial function but rather a highly discretionary undertaking." Equitable Life, supra, 151 N.J. Super. at 238. Accordingly, this court's role in reviewing

administrative decisions is limited.  In re Taylor, 158 N.J. 644, 656 (1999).  We defer to an "agency's expertise and superior knowledge of a particular field[,]" In re Herrmann, 192 N.J. 19, 28 (2007), unless the agency's interpretation is "plainly unreasonable."  In re Election Law Enforcement Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 260 (2010) (internal quotation marks and citation omitted).  "Judicial deference is particularly appropriate 'when the case involves the construction of a new statute by its implementing agency.'" Natural Med., Inc. v. N.J. Dep't of Health & Senior Servs., 428 N.J. Super. 259, 270 (App. Div. 2012) (quoting In re Freshwater Wetlands Prot. Act Rules, N.J.A.C. 7:7A-1.1 et seq., 238 N.J. Super. 516, 527 (App. Div. 1989)).

Following our review, we conclude to issue an order as requested by plaintiffs has the potential of interfering with the orderly workings of DOH in implementing the MMP, making mandamus inappropriate.  In re Failure, supra, 336 N.J. Super. at 262-63.  Dr. Pollack's certification is anecdotal and his two experiences fail to establish plaintiffs' assertions of unnecessary and burdensome regulatory requirements.  Further, if Dr. Pollack is aggrieved by agency action, recourse requires initial administrative review and exhaustion of administrative remedies, a course he has not pursued.  Waltz offers no factual

information based on personal knowledge. She merely imparts her opinion gathered from unidentified hearsay statements. This is not evidential, and is insufficient to support plaintiffs' claim.

We find significant the Legislature, which has actively monitored the MMP regulations, raised no concerns regarding the provisions addressed to a physician's patient registration for the MMP. See N.J.A.C. 8:64-2.1 to 2.6. Indeed, the Legislature has adopted no further resolutions challenging any of the MMP rules or procedures.

We also reject plaintiffs' claims of the need to conduct discovery to develop this issue. The type of discovery requests suggested is neither specific nor descriptive of what information is held by DOH that is necessary to support plaintiffs' allegations. For all of these reasons, we conclude mandamus relief on this issue is inappropriate and is denied.

Plaintiffs next challenge the lack of current operational ATCs, asserting DOH has caused "unjustifiable delay" in meeting its statutory mandate to render approval or rejection within sixty days following receipt of a completed ATC application, as required by N.J.S.A. 24:6I-7(e). Plaintiffs contend the statute mandates agency action, up or down, within sixty days. When their complaint was filed, no ATC was operational, and now, more

than three years following the effective date of the Act, only one-half of the minimum ATCs authorized by the Act have been fully permitted. Pointing to the time elapsed, plaintiffs assert delay in the commencement of ATC operations results from DOH's purposeful inaction. They seek an order directing DOH to complete background investigations and issue licensure approving or rejecting the remaining three ATCs within thirty days and if one of the original ATCs cannot meet the standards, its application shall be rejected and the next available applicant should be approved to commence operations.

DOH opposes the requested relief, arguing it has engaged in "extraordinary work" to make the MMP a reality. DOH identifies the myriad components necessary for licensure and maintains court ordered action is inappropriate because permitting ATCs is highly discretionary and not a mere ministerial act. We agree.

In evaluating whether the requested agency action is ministerial or discretionary, we consider the language of the statute as evincing the Legislature's intent. We reject plaintiffs' assertion that ATC licensure is ministerial.

The Act grants DOH discretion to determine the kind and amount of information necessary to process ATC permit applications and evaluate the need for and regulation of ATCs. N.J.S.A. 24:6I-7 (a), (b) and (i). The Act further directs DOH

"shall issue a permit to a person to operate as an [ATC] if [DOH] finds that issuing such a permit would be consistent with the purposes of this [A]ct and the requirements of this section are met[,]" and "shall approve or deny an application within [sixty] days after receipt of a completed application." N.J.S.A. 24:6I-7(e). "[T]he Act tasks the Commissioner of [DOH]" with the responsibility to "promulgate rules and regulations to effectuate the purpose of this [A]ct, in consultation with the Department of Law and Public Safety." Natural Med., supra, 428 N.J. Super. at 263 (quoting N.J.S.A. 24:6I-16(a)). "In advance thereof, the Commissioner and the Director of the Division of Consumer Affairs are authorized to 'take such anticipatory administrative action . . . as may be necessary to effectuate the provisions of this [A]ct.'" Ibid. (quoting L. 2009, c. 307, § 19).

> Although use of the term "shall" is generally indicative of the strength of the Legislature's intent, it has been construed on occasion as directory, suggestive or instructive, rather than imperative, where it relates to the form and manner in which the law is to be carried out and more clearly implements legislative intent. Thus, the ordinary common meaning of "shall" may be overcome by something in the character of the legislation in the context which will justify a different meaning.
>
> [Id. at 268 (internal quotation marks and citations omitted).]

Only thirteen states allowed the sale of medicinal marijuana prior to adoption of the Act. N.J.S.A. 24:6I-2(c). As noted, the details to effectuate New Jersey's program were required to be formulated by the DOH. The record, although limited, reflects DOH attacked its charge by timely conducted rulemaking to adopt regulations governing the newly created MMP. DOH expeditiously requested and approved six ATC applications. When "considered in full," N.J.S.A. 24:6I-7 "does not allow for automatic licensure" of an ATC whose application was approved. Natural Med., supra, 428 N.J. Super. at 268. Rather, it presents a process, coordinated and overseen by DOH in conjunction with other State agencies.

Not only must the technical requirements of the Act be met and the information contained in the application verified, but an ATC must get ready for business operations, a process ignored or significantly oversimplified by plaintiffs. The non-profit corporations selected as New Jersey's first ATCs were required to obtain a location, local land-use permits or variances, necessary equipment, inventory, and financing. The ATCs hired professional and non-professional staff, and implemented administrative, production, security, quality control, and distribution procedures. They needed to fit-out operational space, train personnel, commence growing product, and meet state

health, safety, and security inspection standards. Approval of ATC operations requires review and input from other State agencies including the Departments of Law and Public Safety, N.J.S.A. 24:6I-16(a), the State Police, N.J.S.A. 24:6I-4, -7, -13, and the Division of Consumer Affairs, N.J.S.A. 24:6I-4(f)(1); L. 2009, c. 307 § 19, and necessitates municipal inspection and permitting. Some ATCs met opposition by communities wary of such an enterprise being located within its boundaries.[13] Even now it appears two ATCs await requisite site permits.

The record shows the scope of necessary review represents the fair exercise of judgment and discretion, which is the province of the functioning agency. We cannot conclude from the evidence presented DOH unjustifiably delayed issuing licensure to allow ATC operations to commence. Plaintiffs offer no proof an ATC's application was fully submitted but ignored by DOH, or that selected ATCs have abandoned moving forward with proposed operation because of barriers erected by the DOH.

Further, plaintiffs' proposition as framed would require DOH to automatically reject a previously accepted ATC, because

---

[13]    See Amy Britain, Upper Freehold Committee Blocks Proposed Medical Marijuana Greenhouse, N.J.com (Dec. 15, 2011), http://www.nj.com/news/index.ssf/2011/12/upper_freehold_council_blocks.html.

it could not open within thirty days.  A decision approving an ATC's operations involves a policy judgment by the agency.  See In re Petition of Howell Twp., Monmouth Cnty., 371 N.J. Super. 167, 188 (App. Div. 2004) (stating the court shall not "compel a specific form of agency action" but may order "a remedy for arbitrary inaction").  This court may not compel DOH to exercise its discretion in a specific manner with respect to the discretionary agency review granted by the Act.  See Loigman, supra, 297 N.J. Super. at 299-300 (denying mandamus to compel the Township to exercise its discretion in a specific manner with respect to a disputed provision of a labor agreement).

Although plaintiffs are not satisfied with the pace of ATC openings, we cannot conclude the delay results from DOH's failure to perform its regulatory responsibilities. Accordingly, we reject as unfounded plaintiffs' assertion DOH has engaged in arbitrary conduct amounting to an abuse of discretion in authorizing ATC operations.  The essence of the relief sought does not encompass performance of "a specific, ministerial action, a set task in terms of mode and manner that leaves no discretion to the official."  Vas, supra, 418 N.J. Super. at 523.  Mandamus is denied.

Nevertheless, we determine plaintiffs validly question whether DOH has ignored the time elapsed from approval of the

26                                                        A-2266-12T3

initial applications and whether it must examine what period is reasonable for an approved ATC to meet requisites for commencement of operations. Breakwater Alternative Treatment Center does not have a designated location and Harmony Foundation, whose application received the second highest score of the thirty-five filed with the review committee, appears stalled in its progress, making its opening uncertain. We agree with plaintiffs DOH has a responsibility to examine the viability of a prospective ATC's fulfillment of the requirements to open for business.

This responsibility is tied to plaintiffs' request to compel DOH to submit reports to the Legislature and the Governor, as mandated by N.J.S.A. 24:6I-12(a)(1), (2) and (c). DOH admits no formal report has ever been compiled and offers no justification for the delay in completing this task. Instead, the agency seeks to rely on its general public communications and annual report submittal during the legislative budget process. We conclude these communications are insufficient to satisfy the statutory directive. Accordingly, plaintiffs' request for mandamus on this issue is appropriate and must be granted.

Where an agency violates the express policy of its enabling act by violating the clear deadline for agency action, the

omission is arbitrary and capricious. <u>Pub. Serv. Elec. & Gas Co.</u>, <u>supra</u>, 101 <u>N.J.</u> at 103 (stating the determination of whether agency action is arbitrary and capricious, allows a court to consider "whether the agency action violates the enabling act's express or implied legislative policies"). Further, when an agency's inaction is unsupported by substantial credible evidence in the record or accompanied by no reasonable explanation — as is the case here — we, likewise, may conclude an agency's inaction is arbitrary, capricious, and unreasonable. <u>Gilliland v. Bd. of Review, Dept. of Labor & Indus.</u>, 298 <u>N.J. Super.</u> 349, 354-55 (App. Div. 1997) (deeming agency action arbitrary and capricious where no explanation is provided to support it).

The Legislature's desire to assure progress of the MMP is expressed under the Act, which directs DOH "shall report to the Governor and the Legislature . . . no later than one year after the effective date of this act, on the actions taken to implement the provisions of this act[,]" and annually thereafter. <u>N.J.S.A.</u> 24:6I-12(a)(1), (2). The Commissioner also must report findings regarding the sufficiency of the number of ATCs and other issues within two years of the effective date and every two years thereafter. <u>N.J.S.A.</u> 24:6I-12(c). We conceive of no reason justifying DOH's noncompliance

with these directives to take finite action within a fixed time period. The conduct required is not discretionary, but involves a ministerial function.

DOH's reporting requirement is designed to inform the identified branches of government as well as the public, and to fully explain where the MMP stands on its expected delivery of specified services to patients who need them. Discussion of the current progress and future expectations allows evaluative judgments to be made in keeping with the Act's identified purposes. The absence of this information has likely led to unfounded assertions, similar to those set forth in plaintiffs' pleadings, which suggest DOH is unconcerned with and has thwarted the MMP's development.

Based on the record before us, we find no apparent basis for continued delay in DOH's compliance with the clear reporting provisions in the Act. Consequently, our intervention is justified. See Howell Twp., supra, 371 N.J. Super. at 187 (stating the court shall not "compel a specific form of agency action" but may order "a remedy for arbitrary inaction"). We compel DOH to file the required reports mandated by N.J.S.A. 24:6I-12(a)(1), (2) and (c), addressing the status of the MMP, the viability of the ATC applicants which have yet to open, and whether the number of existing licensed and operating ATCs fully

29                                                              A-2266-12T3

serve the needs of registered medicinal marijuana patients, within forty-five days of the date of this opinion.

B.

Plaintiffs' complaint also challenges DOH's action, by attacking its rulemaking as ultra vires. They argue DOH "exceeded [its] legislative authority in promulgating regulations so overly restrictive they serve to stifle the [MMP,]" and suggest the regulations are inconsistent with legislative intent. Specifically, plaintiffs rely on the Legislature's adoption of the concurrent resolution, reported on November 15, 2010 and published on February 22, 2011, as support for the proposition the regulations are inconsistent with the statutory mandate. We are not persuaded.

It is well settled, "administrative agencies derive their authority from legislation," and an agency may not act "to alter . . . [or] to frustrate the legislative purpose." In re Agric., Aquacultural, & Horticultural Water Usage Certification Rules, 410 N.J. Super. 209, 223 (App. Div. 2009) (citations omitted). Article V, section IV, paragraph 6 of the New Jersey Constitution allows the Legislature to review any rule or regulation of an administrative agency to determine whether it is consistent with the intent expressed by the Legislature in the statute. If the Legislature finds the rule or regulation

violates the granted authority, it may invalidate or prohibit the adoption of the proposed rule. <u>N.J. Const.</u> art. V, § IV, ¶ 6.

Courts, on the other hand, have "a limited role to play in reviewing the actions of other branches of government" and "can act only in those rare circumstances when it is clear that the agency action is inconsistent with its legislative mandate." <u>Williams v. Dep't. of Human Servs.</u>, 116 <u>N.J.</u> 102, 107 (1989). Appellate "review of agency regulations begins with a presumption that the regulations are both 'valid and reasonable.'" <u>N.J. Ass'n of School Adm'rs v. Schundler</u>, 211 <u>N.J.</u> 535, 548 (2012) (quoting <u>N.J. Soc'y for Prevention of Cruelty to Animals v. N.J. Dep't. of Agric.</u>, 196 <u>N.J.</u> 366, 385 (2008)). "Such judicial deference to the administrative interpretation of a statute is even more appropriate 'when the case involves the construction of a new statute by its implementing agency.'" <u>Freshwater Wetlands Prot. Act Rules</u>, 238 <u>N.J. Super.</u> 516, 527 (App. Div. 1989) (quoting <u>N.J. Guild of Hearing Aid Dispensers v. Long</u>, 75 <u>N.J.</u> 544, 575 (1978)).

> Though sometimes phrased in terms of a search for "arbitrary, capricious or unreasonable" action, <u>Campbell v. Dep't of Civil Serv.</u>, 39 <u>N.J.</u> 556, 562 (1963), the judicial role is restricted to three inquiries: (1) whether the agency's action violated the enabling act's express or implied legislative policies, (2) whether

there was insubstantial evidence in the record to support the findings on which the agency based its actions, and (3) whether in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made after weighing the relative factors.

[Williams, supra, 116 N.J. at 108.]

See also Aqua Beach Condo. Ass'n v. Dep't of Cmty. Affairs, 186 N.J. 5, 16 (2006). Accordingly, in our review of challenges to an agency's exercise of authority, we "may not substitute [our] judgment for the expertise of an agency 'so long as that action is statutorily authorized and not otherwise defective[.]'" Williams, supra, 116 N.J. at 107 (quoting Dougherty v. Dep't of Human Servs., 91 N.J. 1, 12 (1982)). This principle equally applies to policymaking. Dougherty, supra, 91 N.J. at 9-11.

Finally, our Supreme Court has advised the judiciary that "'an ultra vires finding is disfavored.'" Freshwater Wetlands Prot. Act Rules, supra, 238 N.J. Super. at 525 (quoting N.J. Guild of Hearing Aid Dispensers, supra, 75 N.J. at 561). And, any party challenging a regulation must prove its invalidity. N.J. State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 222 (1999).

In this matter, in support of their contention, plaintiffs point to the Legislature's adoption of the concurrent resolution that mandated modification of three rule provisions. Plaintiffs' brief emphasizes the ten percent THC limit imposed by N.J.A.C. 8:64-10-6(c)(5) and the physician's certification required for patient enrollment found at N.J.A.C. 8:64-2.5 illustrative of their contention. Otherwise, they offer no support for the assertion these regulations are ultra vires and "stifling" the MMP.

It cannot be ignored that following DOH's submission of modified rules, the Legislature did not adopt a subsequent proposed concurrent resolution, purporting to invoke the constitutional authority to void rules. The absence of a legislative veto of the remaining regulations suggests deference should be afforded the regulations. Cnty. of Hudson v. State, Dep't of Law & Pub. Safety, 328 N.J. Super. 308, 321, 324 (App. Div. 2000).

It is also clear that a challenge to an existing regulation as applied must be made to the agency in the first instance. Dr. Pollack has not exhausted available administrative remedies to support his contention the patient certification provisions are onerous and unnecessary. Ortiz v. N.J. Dep't of Corr., 406 N.J. Super. 63, 65, 69 (App. Div. 2009) (holding that an appeal

may not be maintained where a party fails to exhaust administrative remedies by not exercising a statutory right to an administrative appeal). The challenge to the limitation is accompanied by no support. Based on our review, the request must be dismissed.

Plaintiffs also claim the regulations are unconstitutional. We need not address this assertion because no legal arguments are offered to support the contention, aside from identifying the concurrent resolutions. As noted, the concurrent resolutions targeted three regulations for modification. In this light, we deem the plaintiffs' attack on the entirety of the regulatory scheme is unsupported. R. 2:11-3(e)(1)(E).

Plaintiffs' final request seeks appointment of the Coalition for Medical Marijuana of New Jersey as a "neutral third party" to monitor DOH's compliance with the Act and the implementation of the MMP. We also reject this application. As discussed in our opinion, other than its omission of required progress reports, we do not agree DOH has ignored its responsibilities or refused to comply with the legislative mandate to implement the MMP. The need for a third-party monitor is unfounded.

In summary, DOH shall render its status report to the Legislature and Governor as mandated by N.J.S.A. 24:6I-12(a)(1),

(2) and (c) within forty-five days of the date of this opinion. Otherwise, for the reasons set forth, plaintiffs' requests for relief are denied and their complaint is dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2266-12T3