**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1607-19T2

ROBERT MOSS,

     Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

     Defendant-Respondent.

_____

Submitted September 29, 2020 – Decided November 2, 2020

Before Judges Messano, Hoffman and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1436-19.

Robert Moss, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jill Denyes, Deputy Attorney General, on the brief).

PER CURIAM

In this in lieu of prerogative writ action, plaintiff Robert Moss appeals from the November 22, 2019 Law Division order dismissing with prejudice his second amended complaint. Moss sought to enjoin defendant New Jersey Department of Environmental Protection (the DEP) from managing vernal pools in the Sparta Mountain Wildlife Management Area (Sparta Wildlife Area) in the manner provided for by the Forest Stewardship Plan (the Stewardship Plan) for that area. In the alternative, plaintiff sought mandamus relief, arguing the DEP failed to fulfil its ministerial duty to manage the vernal pools in accordance with the law. We affirm.

The Sparta Wildlife Area consists of 3,461 acres of state land in Sussex and Morris Counties and hosts a number of forest types and wildlife. All or some of the Sparta Wildlife Area lies within the Highlands Preservation Area, which is subject to the Highlands Water Protection and Planning Act[1] (the Highlands Act). Activity and development conducted within the Highlands Preservation Area requires review and approval by the DEP. N.J.S.A. 13:20-30. Certain activities within the Highlands Preservation Area are exempt from the provisions of the Highlands Act, including those conducted pursuant to a plan

---

[1] N.J.S.A. 13:20-1 to -35.

approved by the DEP in accordance with N.J.S.A. 13:1L-31. N.J.S.A. 13:20-28(a)(7).

In 2015, the DEP prepared a draft of the Stewardship Plan for the Sparta Wildlife Area and posted the draft for public comment. After receiving and reviewing public comments from various stakeholders, the DEP's Division of Fish & Wildlife (the DFW) approved the Stewardship Plan on March 13, 2017. The DEP issued public notice of its approval of the Stewardship Plan on May 3, 2017.

The Stewardship Plan outlines five goals and objectives to guide its forest stewardship efforts over a ten-year period. The goals are:

1) Maintain ecosystem health, diversity and integrity[;]

2) Protect and enhance hydrologic resources[;]

3) Inventory and monitor priority wildlife populations and habitat[;]

4) Provide compatible wildlife related recreational opportunities and facilities[;]

5) Continue management in a manner that follows Forest Stewardship Council (FSC) Principles and Criteria[.]

The Stewardship Plan further states that the "[o]bjectives of this plan are aimed at maintaining, enhancing, or restoring underrepresented ecological conditions

A-1607-19T2

beneficial to wildlife that would naturally occur on sites with appropriate conditions . . . ."

The Stewardship Plan also discusses cautionary measures to be taken to ensure DEP forestry activities do not disturb or damage the hydrologic features within the Sparta Wildlife Area, which include streams, ponds, wetlands, flooded forests, and vernal pools. Vernal pools are temporary bodies of water, which retain winter-spring precipitation, but dry up during the warmer months. Vernal pools provide a unique habitat for a rich diversity of amphibious, vegetative, and aquatic species. Regarding the management of vernal pools, the Stewardship Plan states:

> [V]ernal pool recommendations may be adjusted by DFW's Endangered and Nongame Species Program (ENSP) staff at specific locations in accordance with the site conditions encountered and certain wildlife habitat objectives. When there is no wildlife related reason to purposefully manage areas near vernal pools, the default conservation measures employed at vernal pools will be the management recommendations provided for "Pool Depressions, Protection Zones, and Life Zones" detailed in the Vernal Pool Habitat in Conservation Planning document (Vermont Biology Technical Note 1., 2010).

The Vermont Biology Technical Note (the VB Technical Note) referenced here describes and discusses vernal pools and includes recommendations for their management. Specifically, the VB Technical Note provides:

A-1607-19T2

If the landowner is interested in managing for vernal pool wildlife then a 600[-]foot or larger buffer should be used. This will accommodate the upland habitat needs of the majority of the population of mole salamanders (note: wood frogs will generally travel much further). When productive forest and timber harvesting is an objective, buffer the pool area to 400 feet. Note that this 400[-]foot distance will only address a portion of the habitat used by pool breeding amphibians. This distance is intended to be a practical management approach in managed forests which readily allow for multiple objectives to be met.

Further, in specifically addressing forest management, the VB Technical Note reiterates:

Recall that the 400[-]foot life zone represents a mean distance for mole salamander migration from vernal pools and will only protect a portion of the habitat being used by the animals. Where wildlife is the primary objective, expand the Life Zone to 600 feet or more. Herbicides or pesticides use should be avoided or minimized around the vernal pool depression, protection and life zone.

The Sparta Wildlife Area is divided into thirty-three "stands" based on the ecological and geographic features within each stand. The Stewardship Plan contemplates the implementation of additional "practice plans" or "operational plans," which would provide for the management of individual project sites within a particular stand. For example, a practice plan governing a project taking place within stand eighteen describes the project as being located

5

approximately 400 feet from the nearest vernal pool and on the other side of a hill. The practice plan also states that the project area was examined to "verify if unmapped vernal pools exist, and none were found." Further, the practice plan concludes, "This project will have no effect on vernal pools . . . ."

This is not plaintiff's first attempt at challenging the Stewardship Plan but rather, his third. In June 2017, shortly after the DEP issued public notice of the Stewardship Plan, Beaver Lake Realty Company (Beaver Lake), a private lake community within the Sparta Wildlife Area, timely appealed the Stewardship Plan to this court. While this action was pending, on July 31, 2017, over Beaver Lake's objective, plaintiff moved to intervene in Beaver Lake's appeal, arguing the Stewardship Plan violated Green Acres laws. We denied plaintiff's motion to intervene as well as his motion to reconsider that denial, and the Supreme Court denied plaintiff's application in December 2017. Beaver Lake later withdrew its appeal so it could proceed to mediation with the DEP.

On February 6, 2018, plaintiff again attempted to challenge the Stewardship Plan by filing a complaint in lieu of prerogative writ in the Superior Court, Law Division, Essex County, seeking injunctive relief to prevent the plan's implementation. The case was transferred to Mercer County, where the trial court dismissed plaintiff's complaint with prejudice. We affirmed that

decision, agreeing with the trial court that the Stewardship Plan was developed by the DEP through informal agency action, making it a final agency action falling within the exclusive jurisdiction of the this court. See Moss v. State, No. A-5455-17 (App. Div. June 6, 2019) (slip op. at 5). And since plaintiff did not challenge the plan within forty-five days as required by Rule 2:4-1(b), nor did he seek a thirty-day extension of that deadline as permitted under Rule 2:4-4(a), we were "satisfied the trial court correctly determined his challenge was time-barred and appropriately declined to transfer plaintiff's action to the Appellate Division for further consideration." Id. at 5.

On July 19, 2019, plaintiff filed a new complaint in lieu of prerogative writs against the DEP. He filed a first amended complaint on August 12, 2019 and a second amended complaint on August 15, 2019. In his second amended complaint, plaintiff cited the VB Technical Note referenced in the Stewardship Plan, highlighting the recommendation that when a landowner's interest is in promoting wildlife, vernal pool buffers should be 600 feet or larger, but when the landowner is engaged in "productive forest and timber harvesting," vernal pool buffers should be 400 feet. Plaintiff noted that productive forest and timber harvesting was not one of the Stewardship Plan's goals, but the goals did include "restoring underrepresented ecological conditions beneficial to wildlife that

would naturally occur on sites with appropriate conditions." Plaintiff also claimed that the mission statement of the DFW, which manages the Sparta Wildlife Area, "constitutes a mandate to 'maintain . . . existing wildlife populations at levels that are viable and sustainable.'" Plaintiff asserted that these two goals may come in conflict and that "[a] less-than-600-foot buffer around a vernal pool may not be sufficient to maintain 'viable and sustainable' populations of vernal-pool-dependent species, while a 600-foot buffer around the same pool might circumscribe management activities designed to create more diverse habitat." Because of these conflicting goals, plaintiff alleged "the 400-foot pool buffer was arbitrarily selected . . ." and that the DEP had failed to explain "'how such a buffer area was determined . . . .'"

The complaint described the "nature of the action":

> Plaintiff seeks to enjoin further stand treatments until [the] DEP rationally determines the impact of vernal pool buffer sizes on the viability and sustainability of populations of vernal-pool dependent species, and on the management goal of restoring certain other species through the creation of more diverse habitat, and rationally resolves any conflicts between the two goals.

And the complaint listed, as its first and only count, an alleged a violation of the Highlands Act:

> DFW has not determined if 400-foot buffers around vernal pools will adversely impact the viability and

A-1607-19T2

sustainability of populations of vernal-pool-dependent species, nor has it determined if larger buffers will adversely impact the restoration of certain other species through the creation of more diverse habitat. [The DEP] thus cannot know whether there is any conflict between these two management goals. Its present use of 400-foot buffers is arbitrary and capricious, in violation of In re Taylor, 158 N.J. 644, 656-57 (1999), and not in accordance with an approved forest stewardship plan, in violation of N.J.S.A. 13:20-28(a)(7).

Further, plaintiff demanded judgment against the DEP, seeking the following relief:

a) Declaring that DFW's adoption of 400-foot buffers around vernal pools is arbitrary, capricious, and not in accordance with the Plan;

b) Declaring that DFW's treatments (felling of trees) under color of the Plan are therefore in violation of N.J.S.A. 13:20-28(a)(7);

c) Enjoining further such treatments in [the Sparta Wildlife Area] until such time as DFW determines, on the basis of scientific data, the impacts 600-foot vernal pool buffers on efforts to restore certain species through the creation of more diverse habitats, and buffers of less than 600 feet on vernal-pool-dependent species;

d) Ordering the observance of 600-foot buffers around vernal pools, where there is no conflict between maintaining viable and sustainable populations of vernal-pool-dependent species, and creation of more diverse habitat for the restoration of certain other species;

e) Where there is a conflict as described in (c), enjoining further such treatments until such time as DFW chooses buffer sizes as a matter of policy and articulates a rational reason therefor, balancing the need to maintain viable and sustainable populations of vernal-pool dependent species against the management goal of restoring certain other species by the creation of more diverse habitat, and giving due weight to the Jefferson salamander's status as a species of special concern.

f) Such other relief as the Court may determine is reasonable or necessary, and just.

The DEP moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The trial judge heard arguments on the DEP's motion on November 22, 2019. During the hearing, the trial judge noted plaintiff's complaint was "confusing, and that it was difficult . . . to understand . . . what the cause of action was . . . ." Still, the judge attempted to discern a cause of action by analyzing the relief requested. First, the judge noted that the Highlands Act does not supply a private cause of action, and plaintiff could not bring his complaint under that statute. Assessing plaintiff's complaint further, the judge ultimately determined that plaintiff was "asking for a revision of the . . . plan, because he's not satisfied that the current plan contains adequate protection for vernal pools." Because plaintiff was seeking to revise the

Stewardship Plan, the judge found the complaint was "not appropriately brought[,]" given that it was now "over two years after the adoption of the plan, which went through extensive public comment." On this issue, the judge concluded:

> What you have to do as a court is you have to analyze the complaint and you have to try to get to what the essence of it is. And to me, the essence of this really is to . . . raise issues that have already been addressed by DEP in the plan, and the time for challenging it has passed.

During the hearing, plaintiff also presented an alternative argument not mentioned in his complaint, raising a cause of action for mandamus. The trial judge understood plaintiff's mandamus claim as arguing that the Stewardship Plan's incorporation of the VB Technical Note imposed upon the DEP a ministerial duty to ensure the Sparta Wildlife Area's vernal pools were surrounded by 600-foot buffer zones. The judge rejected this argument, finding that the Plan allowed the DEP flexibility in managing the size of vernal pool buffers. Given there was no statutory or other existing authority imposing such a duty on DEP, the judge noted that plaintiff appeared to be "asking the Court to have DEP create the ministerial duty that it must follow in . . . every instance where there is forest management action near a vernal pool." The judge likewise rejected this argument as beyond the scope of a mandamus action.

11

Concluding, the trial judge found that plaintiff's complaint did not state a cognizable cause of action appropriate for the trial court to hear. The judge also noted that except for legitimate mandamus actions, "[a]ny challenge to State agency action or inaction has to be done in the first instance in the Appellate Division . . . ." Because plaintiff presented a challenge to a state agency action and because the challenge was untimely, the judge dismissed plaintiff's complaint with prejudice. This appeal followed.

"On appeal, we apply a plenary standard of review from a trial court's decision to grant a motion to dismiss pursuant to Rule 4:6-2(e)." Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011). "[W]e owe no special deference to a trial judge's legal interpretations in deciding any motion." Giannakopoulos v. Mid State Mall, 438 N.J. Super. 595, 600 (App. Div. 2014).

"In reviewing a complaint dismissed under Rule 4:6-2(e) our inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). "The essential test is simply 'whether a cause of action is "suggested" by the facts.'" Green v. Morgan Props., 215 N.J. 431, 451 (2013) (quoting Printing Mart, 116 N.J. 739, 746 (1989)). Reviewing courts must "search[] the

12

complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).

Plaintiff here argues the trial judge failed to thoroughly search his complaint for a cause of action. He further argues the judge erred in concluding the complaint presented no cause of action appropriate for the trial court to hear, but rather constituted an effort to challenge and change the Stewardship Plan. We find these arguments unpersuasive.

The transcript of the hearing on the DEP's motion to dismiss reveals the trial judge made a substantial effort to conduct an in-depth search of plaintiff's complaint. The judge attempted to ascertain a cause of action by scrutinizing plaintiff's requested reliefs and engaging plaintiff with questions. The judge even considered fully plaintiff's mandamus argument despite its absence from plaintiff's complaint. Ultimately, the judge determined that plaintiff's complaint could only be interpreted as a challenge to a state agency action, which was a cause of action reserved exclusively for the Appellate Division's jurisdiction.

Our standard of review requires we too search plaintiff's complaint thoroughly and with liberality to ascertain whether a cause of action can be gleaned from it. Our examination of plaintiff's complaint likewise reveals that plaintiff's only ascertainable cause of action would be an attack to the Stewardship Plan. Plaintiff seeks for the court to declare the DEP's adoption of 400-foot vernal pool buffers arbitrary and capricious, to suspend the felling of trees near vernal pools until the DEP determines an appropriate buffer size that is rationally related to its conflicting stated goals, and for the court to order DEP impose 600-foot buffers around vernal pools in areas where there is no conflict between these goals. Each of these requests constitute attempts to challenge and alter the Plan.

Since the Plan is a final agency action, as we established in plaintiff's prior suit against DEP, the trial court correctly concluded that plaintiff should have brought his claim to this court, rather than to the trial court. Nevertheless, even if plaintiff had challenged the Plan in our court initially, dismissal would be appropriate, as plaintiff's complaint was filed two years after the deadline for filing such an action, as set by Rule 2:4-1(b).

14

A-1607-19T2

On the other hand, if plaintiff did have a cognizable mandamus claim, he could properly seek relief in the trial court. However, we agree with the trial judge that plaintiff failed to establish a cause of action for mandamus.

"[O]ur authority to compel agency action is exercised sparingly, as courts are ill-equipped to micromanage an agency's activities." Caporusso v. N.J. Dep't of Health & Senior Servs., 434 N.J. Super. 88, 101 (App. Div. 2014). "Rather, we accord wide discretion to administrative agencies which are to decide 'how best to approach legislatively assigned administrative tasks.'" Ibid. (quoting In re Failure by the Dep't of Banking & Ins., 336 N.J. Super. 253, 262 (App. Div. 2001)).

Relief in the nature of mandamus "is only appropriate where the party seeks to compel a governmental agency to perform a duty [that] is ministerial and wholly free from doubt or to compel the exercise of discretion, but not in a specific manner." Twp. of Neptune v. N.J. Dep't of Envtl. Prot., 425 N.J. Super. 422, 434 (App. Div. 2012) (internal quotation marks and citation omitted). "Mandamus issues to compel the performance, in a specific manner, of ministerial duties so plain in point of law and so clear in matter of fact that no element of discretion is left to the precise mode of their performance. . . ." Id. at 435 (internal quotation marks and citation omitted). Thus, mandamus-like

15

relief is available "to compel only clearly mandated ministerial obligations, which do not require an evaluative judgment in the exercise of discretion." Caporusso, 434 N.J. Super. at 101 (internal quotation marks and citation omitted).

Applying these principles, plaintiff has failed to plead the non-exercise of a non-discretionary, ministerial duty susceptible to mandamus-type relief. The Stewardship Plan explicitly affords the DEP discretion in managing vernal pool buffers, stating, "vernal pool recommendations may be adjusted by DFW's Endangered and Nongame Species Program (ENSP) staff at specific locations in accordance with the site conditions encountered and certain wildlife habitat objectives." Indeed, the practice plan pertaining to the project within stand eighteen suggests the DEP is exercising its discretion in managing vernal pool buffers, depending on the individual projects' impact on vernal pools. Further, while the Stewardship Plan references the VB Technical Note, it does not require DEP follow its recommendations. The Stewardship Plan states, "When there is no wildlife related reason to purposefully manage areas near vernal pools, the default conservation measures employed at vernal pools will be the management recommendations provided for [in the VB Technical Note]." The recommendations for vernal buffers in the VB Technical Note are not mandated

by the Stewardship Plan, but rather a default, which can be diverged from when necessary. Therefore, nothing in the Stewardship Plan imposes upon the DEP a ministerial obligation to manage the Sparta Wildlife Area's vernal pool buffer zones in strict accordance with the VB Technical Note's recommendations. Nor does any statute or other authority impose such a duty. Thus, the trial judge correctly found plaintiff failed to establish a cause of action for mandamus.

Because plaintiff presented no cause of action appropriate for the trial court and because plaintiff's challenge to the Stewardship Plan in the Appellate Division would be untimely, we affirm the trial judge's dismissal of plaintiff's complaint.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1607-19T2