IN THE MATTER OF THE APPLICATION FOR CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY FOR SOLID WASTE COLLECTION BY NELSON W. MASON, SR.

Superior Court of New Jersey
Appellate Division

Argued March 18, 1975—Decided May 27, 1975.

Before Judges CARTON, CRANE and KOLE.

*Mr. Vincent J. Dotoli* argued the cause for appellant Solid Waste Industry Council of New Jersey.

*Ms. Carla Vivian Bello,* Deputy Attorney General, argued the cause for respondent New Jersey Board of Public Utility Commissioners *(Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

*Messrs. Ruprecht & Graham* filed statement in lieu of brief *for amicus curiae,* M. Burroughs & Sons, Inc.

*Messrs. Ruprecht &Graham* filed statement in lieu of brief for *amicus curiae,* O'Hara Sanitation Company, Inc.

The opinion of the court was delivered by

CARTON, P. J. A. D. Solid Waste Industry Council, an association of solid waste collectors, appeals from a determination of the Board of Public Utility Commissioners (Board) granting a certificate of public convenience and necessity for solid waste collection. It raises a number of substantive and procedural questions relating to the Solid Waste Utility Control Act of 1970, *N. J. S. A.* 48:13A–1 *et seq.*

In 1973 Nelson W. Mason, Sr. made an application for a certificate of public convenience and necessity to operate a solid waste collection business in Cumberland County. A hearing was conducted on the application by a hearing examiner after publication in a Bridgeton newspaper of a notice of such hearing. At the hearing the Solid Waste Industry Council (SWIC) and SCA Services, Inc. (SCA), an interstate holding company with solid waste collection operations in New Jersey, made motions to intervene. Both motions were denied but the hearing examiner permitted counsel for SWIC to make a statement as an objector at the hearing. A representative of SCA also spoke as an objector, claiming that two existing concerns had the capacity to provide adequate service in Cumberland County. He also questioned Mason's qualifications to provide service adequate for the public needs. SCA did not appeal.

The hearing examiner's written report to the Board noted that SWIC·and SCA were denied status as intervenors. The hearing examiner recommended the issuance of the certificate to Mason. He found that Mason's experience and on-the-job training were sufficient for him to serve adequately the number and type of customers which the record indicated; that his application and proposed tariff showed his customers would pay a reasonable price for service rendered, resulting in a sufficient income to cover operating expenses; that the equipment to be used by him was adequate to engage reasonably and efficiently in a solid waste collection operation of the type and size indicated by the record, and that the objectors had failed to show he was incapable of adequately operating this collection service in Cumberland County. The Board adopted the hearing examiner's report and recommendations.

It appears that prior to the issuance of the order the objectors had filed timely notices of exception to the hearing examiner's report and recommendations, but that these notices were inadvertently not brought to the Board's attention and the order was issued without reviewing the objectors' exceptions. The Board then decided to treat the exceptions as a motion for reconsideration and, after reviewing the exceptions and the record as a whole, the Board issued its decision denying the motion for reconsideration. SWIC thereupon filed its notice of appeal.

SWIC advances two major objections to the Board determination here appealed from. One is procedural. SWIC contends that it was improperly denied intervenor status at the hearing. The second is substantive. SWIC contends that a finding that existing service is inadequate, a determination not made in this case, is a prerequisite to the granting of a certificate of public convenience and necessity.

These and other questions raised by SWIC must be considered against the background of the relevant statutes and administrative rules.

The Solid Waste Utility Control Act, *N. J. S. A.* 48 :13A–1 *et seq.*, was adopted in 1970 for the purpose of regulating the

solid waste collection and disposal industry. To that end the industry was designated a public utility and subjected to the regulatory authority of the Board of Public Utility Commissioners. The Board was vested with a full range of powers to perform its regulatory duties. It was empowered to make all necessary rules, regulations and administrative orders for the regulation of rates and the utility aspects of the industry, *N. J. S. A.* 48:13A–4; to establish franchise areas, *N. J. S. A.* 48:13A–5; to issue certificates of public convenience and necessity to persons found qualified, *N. J. S. A.* 48:13A–6, and to revoke such certificates under specified conditions, *N. J. S. A.* 48:13A–9.

In addition, *N. J. S. A.* 48:13A–10 prohibits the monopolization or attempted monopolization of the solid waste industry.

The Board has rule-making powers under *N. J. S. A.* 48:2–12 generally, and under *N. J. S. A.* 48:13A–4 specifically, for the solid waste industry. This authority has been exercised through the adoption of a series of rules concerning the form and procedure for public hearings, which rules are published in the *New Jersey Administrative Code.* Under *N. J. A. C.* 14:3–10.6 the Board may hold a hearing to grant a certificate of public convenience and necessity and must hold a hearing before denying an application. Hearings, when held, are open to the public (*N. J. A. C.* 14:1–10.2) and public notice may be required by the Board (*N. J. A. C.* 14:1–10.1(d)). Notice was required, and given by Mason, in this case.

Parties to the proceedings are classified as petitioners, respondents or intervenors (*N. J. A. C.* 14:1–4.2). Persons opposing petitions are classified as "objectors" unless granted permission to intervene (*N. J. A. C.* 14:1–4.3). An objector is allowed only to state his position for the record, while an intervenor is a full participant in the hearing, with the right to introduce evidence and conduct cross-examination. One seeking intervenor status must show that he will be substantially and specifically affected by the proceeding

(*N. J. A. C.* 14:1–9.2). SWIC's motion for intervention was denied on the ground that it failed to make such showing.

■ The issue is thus posed as to the extent to which potential competitors of an applicant for a certificate of public convenience and necessity have the right to be heard before the Board. This question, of course, is not to be confused with the right to seek judicial review of administrative determinations. That right inheres in both direct parties to the proceedings and in all persons directly affected or aggrieved by the administrative action. *Elizabeth Federal S. & L. Ass'n v. Howell,* 24 *N. J.* 488, 499–504 (1957).

■ The *Elizabeth Federal* case, involving an application by a savings and loan association to establish a branch office, is factually similar to the present case and appears to be dispositive. There competitors of the applicant challenged the decision of the Commissioner of Banking and Insurance that they would not be granted status as full participants to the proceeding. The Supreme Court held that a competitor had no constitutional right to such participation and that the right, if it existed, must be established by statute. The court found no statutory basis for the claim. The court further noted that where there exists administrative discretion to make *ex parte* disposition of applications rather than conduct a full hearing, the position of the objector is further weakened. In the present case the authority to grant applications *ex parte* without a full hearing is embodied in *N. J. A. C.* 14:3–10.6. SWIC has not produced any statutory authority granting mere competitors the right to intervene in certification proceedings.

Nor are we persuaded that the Board erred in finding that SWIC failed to make a sufficient showing, under the Board's regulations, that it was entitled to intervenor status. *N. J. A. C.* 14:1–9.2 limits intervention to persons showing that they may be "substantially and specifically" affected by the proceedings. SWIC is simply an organization of solid waste collectors. As distinguished from its members,

it has no direct or specific interest in the proceedings. Any interest it may have appears to be. a general one and derived from that of :the individual members.

: , Moreover, there is nothing in the present record which would support a conclusion that any SWIC member has a substantial or specific interest in the Mason application. Quite the contrary. SWIC conceded on its motion to intervene that it would be affected only if the applicant were not restricted to Cumberland County. Parenthetically, we note that, depending on the particular circumstances of the case, a concern already providing service to a proposed service area, or planning to do so, might well be in a position to make the requisite showing of interest under *N. J. A. C.* 14:1–9.2.

## II

Appellant argues that an applicant must show, and the Board must find, that existing service is inadequate before granting a certificate of public convenience and necessity. The Board takes the position that its fact-finding duties are limited, under *N. J. S. A.* 48:13A–6, to determining whether an applicant is sufficiently qualified and financially responsible to enter the industry, and that it has no concern with the adequacy or inadequacy of existing service. The Board notes the legislative purpose of encouraging competition in the industry as opposed to the traditional monopolistic scheme found in utility regulation. It contends that to require a showing of the inadequacy of existing service would foster the very monopolistic tendencies the Legislature sought to remedy.

██ *The adequacy of existing service levels is ordinarily a factor to be considered by public utility regulatory agencies* in the granting of certificates of public convenience and necessity. The issue is the extent to which the anti-monopoly provisions of the Solid Waste Utility Control Act, which represent a new element in a regulatory field more accus-

tomed to the limiting of competition, reduces the weight to be given to this factor. We conclude that it was not the Legislature's intention that the Board disregard altogether the adequacy of service factor in its certification determination.

As noted above, the Legislature, in determining to regulate the solid waste industry, denominated the industry a public utility and subjected it to the control of the same agency which regulates other utilities. Thus the regulation of the solid waste industry was placed within the statutory scheme of general utility regulation. It seems clear that the Legislature intended that the Board should apply to this industry the same general standards, practices and procedures applicable to the regulation of other utilities, to the extent practicable and except where the statute clearly prescribes otherwise.

The phrase "public convenience and necessity," although not defined in the statute, is one commonly employed in public utility legislation and expresses a generally recognized concept. It is a term that has generally been given a broad meaning, permitting public utility boards to consider any and all factors related to the public interest. Among the factors considered proper for consideration are the adequacy of existing service levels and the impact of the proposed service on present service. *In re Greenville Bus Co.*, 17 *N. J.* 131 (1954). But, as Justice Jacobs noted in *Greenville*:

The paramount consideration is the public interest, and any incidental disadvantages are simply entitled to be weighed in the balance against the ultimate public advantages. [at 143]

The concept of public necessity is itself flexible. This court has observed, in *In re Petition of Public Service*, 103 *N. J. Super.* 505, 510–511 (App. Div. 1968), that "necessity need not be shown in the sense of essential or absolutely indispensable," and that "[i]t is sufficient if the proposed service be found to be reasonably requisite to serve the public convenience."

In such a balancing process the Board can consider the adequacy of existing service levels along with the desirability of competition in making a determination as to certification. However, we do not interpret the legislative intention as imposing a burden on the applicant to demonstrate the inadequacy of existing service or on the Board to make a specific finding to that effect.

We see no necessity, on the record in this case, to remand for further proof on this issue. A finding of adequacy of service is not, of itself, determinative. Nor was there evidence before the Board in this case that the issuance of a certificate to Mason would result in ruinous competition which would impair the ability of others to provide service. The applicant served only 90 customers, although he hoped to expand his business. The representation that the two subsidiary companies of SCA had the capability of servicing the area is not material. Such potential does not constitute existing service. And, if the question is protection against destructive competition, the protection is to be afforded a service that is being given. *West Shore R. R. Co. v. Bd. of Public Utility Comm'rs*, 13 *N. J. Misc.* 180, 182 (S. Ct. 1935), aff'd o. b. 116 *N. J. L.* 191 (E. & A. 1936). However, this question is not before us because SCA, even if it is operating in the area, is not an appellant. Further, we see no possible prejudice to it by the issuance of the Mason certificate.

As to the other factors involved, we are satisfied there was sufficient evidence of Mason's experience and financial responsibility to support the finding that he was qualified under the statute.

Appellant's claim that the hearing officer was unqualified is without merit. The record demonstrates that he met the statutory requirements. Nor do we see any evidence of bias or prejudice on the part of the hearer to render him disqualified in this proceeding.

▮ The objector's argument that the Board should have rescinded its order in order to have the exceptions considered before issuing the order is frivolous. The Board had considered the arguments and its written brief in support of its motion to intervene. These arguments were substantially identical to those raised in the exceptions. The Board reviewed the entire record, together with appellant's exceptions, before denying the motion for reconsideration. Although the procedure adopted may not have been in accordance with the best practice, we see no valid basis for reversal as no prejudice has been shown. See *Winston v. So. Plainfield Bd. of Ed.*, 125 *N. J. Super*. 131, 139–140 (App. Div. 1973), aff'd 64 *N. J.* 582 (1974).

Nor do we perceive any merit to appellant's additional contention that the Board's application of the statute denied the solid waste industry equal protection under the law. In support of this contention SWIC attempts to compare the qualifications of Mason and that of one McGarry, who applied for a public mover certificate in another proceeding before the Board. The simple answer is that there were significant factual differences between McGarry's application in that proceeding and that of Mason in the present one, and also that there are significant differences between the solid waste utilities and other utilities.

Finally, we deem it inappropriate to rule, on this record, on the additional issues raised by SWIC concerning the validity of the administrative regulations promulgated by the Board and the guidelines prescribed therein. Determination of the propriety of the issuance of the certificate to Mason and SWIC's objection is unrelated to these general complaints. If SWIC desires to pursue a challenge to any of these administrative procedures, it is at liberty to do so in a separate action brought for that purpose.

Affirmed.