**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1429-19

NEW JERSEY COALITION OF
AUTOMOTIVE RETAILERS,

     Plaintiff-Appellant,

v.

NEW JERSEY MOTOR VEHICLE
COMMISSION, B. SUSAN
FULTON, in her official capacity
as Chief Administrator for the New
Jersey Motor Vehicle Commission,
STATE OF NEW JERSEY,
OFFICE OF THE ATTORNEY
GENERAL, DIVISION OF
CONSUMER AFFAIRS, KAITLIN
L. CARUSO, in her official
capacity as Acting Director of the
Division of Consumer Affairs,
and TESLA, INC.,

     Defendant-Respondents.

_____

Submitted March 23, 2021 – Decided April 20, 2021

Before Judges Yannotti, Mawla, and Natali.

On appeal from the New Jersey Motor Vehicle Commission.

Genova Burns, LLC, attorneys for appellant (Angelo J. Genova and Jennifer Borek, of counsel and on the briefs; Matthew I. W. Baker and Crystal L. Lawson, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondents New Jersey Motor Vehicle Commission, B. Susan Fulton, New Jersey Division of Consumer Affairs, and Kaitlin L. Caruso (Melissa H. Raksa, Assistant Attorney General, of counsel; Jennifer R. Jaremback, Deputy Attorney General, on the brief).

Duane Morris, LLP, Alan E. Schoenfeld (Wilmer, Cutler, Pickering, Hale, and Dorr, LLP) of the New York bar, admitted pro hac vice, and Seth P. Waxman (Wilmer, Cutler, Pickering, Hale, and Dorr, LLP) of the District of Columbia bar, admitted pro hac vice, attorneys for respondent Tesla, Inc. (Paul F. Josephson, Alan E. Schoenfeld and Seth P. Waxman, on the brief).

PER CURIAM

This matter comes before us pursuant to a December 2, 2019 order transferring plaintiff New Jersey Coalition of Automotive Retailers' (NJCAR) complaint in lieu of prerogative writs pursuant to Rule 2:2-3(a)(2) and Rule 2:2-4. We dismiss the appeal for the reasons set forth herein.

Prior to filing its lawsuit, NJCAR complained to the New Jersey Motor Vehicle Commission (MVC), the Chief Administrator of the MVC, the State of New Jersey, the Attorney General, the Division of Consumer Affairs (DCA), the

Director of the DCA, (collectively "the State defendants"), that Tesla, Inc. (Tesla) was conducting business in New Jersey in violation of the Franchise Practices Act (FPA), N.J.S.A. 56:10-1 to -31; the Motor Vehicle Certificate of Ownership Law (MVCOL), N.J.S.A. 39:10-1 to -38; and the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -211.

By way of background, Tesla has four licensed New Jersey locations: Lawrence Township[1], Cherry Hill, Paramus, and Springfield. It also operates two "gallery" locations in Garden State Plaza Mall ("GSP") and Short Hills "where visitors can see Tesla vehicles, learn about how they work, and obtain information about how to purchase them online from Tesla in California or at licensed sales locations (also operated by Tesla)."

In New Jersey, all automotive manufacturers are subject to the FPA, which regulates, among other things, automotive sales. N.J.S.A. 56:10-1 to -31. The Legislature enacted the FPA "to define the relationship and responsibilities of franchisors and franchisees in connection with franchise arrangements and to protect franchisees from unreasonable termination by franchisors that may result from a disparity of bargaining power between national and regional franchisors

---

[1] In January 2020, the MVC approved Tesla's application to relocate its Short Hills location to Lawrence Township.

A-1429-19

and small franchisees." N.J.S.A. 56:10-2. This franchise system requires auto manufacturers (franchisors) to distribute their new motor vehicles through dealerships (franchisees) located in New Jersey. See N.J.S.A. 56:10-27. The FPA generally prohibits manufacturers from retailing their vehicles directly to consumers. Ibid. However, a zero emission vehicle manufacturer may sell directly to consumers in accordance with N.J.S.A. 56:10-27.1, which states:

> Notwithstanding the provisions of any law, rule or regulation to the contrary, a motor vehicle franchisor licensed pursuant to R.S.39:10-19 on or prior to January 1, 2014[,] and exclusively manufacturing zero emission vehicles may buy from and sell, offer to sell, or deal to a consumer a zero emission vehicle, provided that the franchisor owns or operates, directly or indirectly:
>
> (1) no more than four places of business in the State; and
>
> (2) at least one retail facility for the servicing, including warranty servicing, of zero emission vehicles sold, offered for sale, or otherwise distributed in this State. This facility shall be furnished with all the equipment required to service a zero emission vehicle.

Since 2015, the MVC has cited Tesla for various violations related to the operation of its New Jersey facilities. Following an audit on May 29, 2015, the MVC issued warnings to Tesla on July 10 and August 25, 2015, for violations

4

of N.J.A.C. 13:21-15.4(c) and (g); 13:21-15.5(a)(14) and (15); 13:21-15.7(b)(2); 13:21-15.9(a) and (g); and 13:21-15.10(a) and (g); and 13:21-15.11(a). After an audit on January 30, 2017, the MVC again found Tesla violated N.J.A.C. 13:21-15.5(a)(14); 13:21-15.7(b)(2); and 13:21-15.9(g). The MVC proposed suspending Tesla's license for five days and imposing a fine. The MVC fined Tesla $500, but did not suspend its license.

Following a third audit on February 17, 2017, the MVC found Tesla violated N.J.A.C. 13:21-15.7(b)(1) and (2); 13:21-15.9(g); and 13:21-15.10(a) and (g), proposed suspending its license for ten days and imposing a fine. The MVC fined Tesla $1,000, but did not suspend its license.

On June 8, 2017, the MVC proposed suspending Tesla's license again for violations of N.J.A.C. 13:21-15.7(b)(1) and (2); 13:21-15.4(a); 13:21-15.9(g); and 13:21-15.10(g). Following a pre-hearing conference, Tesla agreed to correct the violations and paid a $1,000 civil penalty. As a result, the MVC did not suspend Tesla's license.

On July 17, 2018, the MVC investigated alleged violations after receiving a complaint that Tesla operated more than four sales locations. Following an investigation, the MVC issued a report finding Tesla violated N.J.A.C. 13:21-15.5(a)(14) and N.J.S.A. 56:10-27.1 for operating more than four licensed

5

locations. The investigator's report determined the Cherry Hill, Paramus, Short Hills, and Springfield locations were open for auto display and sales with a valid license. Regarding the GSP locations in Paramus, the investigator's report found as follows:

> The second location which was visited was the [GSP] location [in] Paramus . . . . This location does not have a valid license at this time. The location was still open for business with a female employee greeting customers entering the location which was open for business on Wednesday May 16, 2018. The representative displayed the car to me, explained the features to me and answered any of my questions. I had asked about the new affordable model which she explained "was ready for sale however they did not have a model." There was a kiosk with computers to be utilized to see different models and see the various features. There is a potential, since this dealership has internet based ordering, to actually purchase a vehicle from the kiosk within this location. This location was open for auto display and sales without a valid license and a sales representative on site. This location is in violation of the regulations.
>
> . . . .
>
> This dealership has a main location and three valid branch licensed locations. The fifth location ([GSP] Mall) was a licensed location however they no longer have a license at this location. The dealership continues to display and attempt to sell vehicles from this location. The location has not relocated within the mall and has continued the normal operations as when they were licensed. The location still has a sales representative, or as they call them, "Sales Advisor",

6

still have vehicles on display and kiosks to continue your search and even potentially order your vehicle. This dealership has an unlicensed location. This dealership is also in violation of N.J.S.A. . . . 56:10-27.1[,] which restricts this business from operating more than four locations.

On July 17, 2018, the MVC notified Tesla it was in violation of N.J.A.C. 13:21-15.5(a)(14) and (15) because of its utilization of the kiosks directing and allowing customers to "select from various vehicle styles and custom design options, obtain a quote with incentives and order a vehicle." The MVC proposed suspending Tesla's dealer license "for ten . . . days with an assessed civil penalty of $1,000 . . . ." The notice permitted Tesla to request a hearing, specifying "all disputed material facts and legal issues [it] . . . intend[ed] to raise and . . . present all arguments [it] wish[ed] the [MVC] to consider."

Tesla requested a hearing. It denied "any activities that have occurred at the [GSP] Gallery constitute a sale, lease, dealing in motor vehicles, negotiation, sales activity, or any violation of N.J.A.C. 13:21-15.5(a)(14) or (15)" because "[u]sing computer terminals in the manner described by the notice does not constitute a sale or otherwise violate N.J.A.C. 13:21-15.5(a)(14) or ([15])."

On November 9, 2018, the MVC and Tesla entered into a settlement agreement, which required the following:

7

Tesla employees at the . . . [GSP] gallery location shall review and acknowledge receipt of training guidelines on the limitations associated with educating customers at locations not licensed to sell vehicles . . . .

Tesla shall not represent to customers that vehicles may be purchased from the . . . [GSP] location.

Tesla shall not position "Owner Advisors" or other sales personnel at the . . . [GSP] location, or any location in the future that is deemed to be a gallery-only location . . . .

Tesla shall display a sign, legible and visible to the public, at the . . . [GSP] location, and any other unlicensed, gallery location in the State of New Jersey, stating that motor vehicles may not be purchased from that location.

. . . .

This [a]greement is entered into solely for the benefit of the [MVC and Tesla], and no right or benefit is intended to be conferred upon any third party that is not a signatory to this [a]greement.

The MVC withdrew the violation notice and proposed penalties. Tesla updated its website to reflect the "gallery" status of its GSP location.

On January 15, 2019, NJCAR sent a letter to the Attorney General regarding Tesla's alleged "unlawful marketing and advertising practices and unlicensed retail locations." NJCAR alleged Tesla's marketing of its Model 3 vehicle was a "bait and switch." Citing numerous online comments by Tesla's

8

CEO, NJCAR alleged Tesla advertised the upcoming Model as an affordable option at $35,000. However, after production began, Tesla's CEO stated the Model 3 was not being offered at $35,000, rather that price point was possible only after Tesla "achieve[d] target rate [and] then smooth[ed] out flow to achieve target cost. . . . [Tesla n]eed[ed] [three] to [six] months after [5,000 sales per week] to ship $[35,000] Tesla[s] [and] live."

NJCAR therefore alleged the customers who placed 400,000 pre-orders, including 11,000 in New Jersey, "did not know of Tesla's plans to convert their orders into sales of much more expensive vehicles unless consumers were willing to wait an indeterminate and prolonged amount of time for a $35,000 vehicle." NJCAR alleged Tesla's website removed the ability for customers to build a Model 3 starting at $35,000 altogether, and the lowest price model started at $46,000. NJCAR further alleged "the majority of customers who made a deposit with Tesla for a $35,000 Model 3 will most likely never see a $7,500 federal income tax credit, despite that being one of Tesla's main selling features for the vehicle." NJCAR claimed "Tesla has never made a bona fide effort to sell the Model 3 at $35,000."

NJCAR also alleged Tesla violated the CFA and the online advertising requirements in the regulations adopted under the CFA. It noted Tesla offers

9

the Model 3 for sale at an advertised price without including a vehicle identification number and it conditions the price on a "soon-to-be-expired $7,500 federal income tax credit and purported 'gas savings' of $4,300 without any explanation of who qualifies or benefits from this tax credit or how such gas savings are calculated" in violation of N.J.A.C. 13:45A-26A.7(a)(2) and N.J.A.C. 13:45A-26A.6.

NJCAR also alleged Tesla continued to sell vehicles from an unlicensed location in violation of the FPA and the MVCOL by

> [p]resenting Tesla's vehicles for visual inspection by customers; answering specific questions about Tesla's vehicles, including pricing of different models; discussing availability of different models; arranging for test drives; setting up client accounts on Tesla's website with the purpose of eventually ordering a vehicle from the site; and accepting customers' personal information for follow-up communications regarding a prospective purchase [at its GSP location.]

NJCAR claimed "Tesla is preparing to open a sixth location . . . in Lawrence Township."

On May 28, 2019, NJCAR also sent a letter to the DCA Director, which included allegations of unlawful advertising. On July 19, 2019, NJCAR's counsel sent a letter to the MVC and DCA demanding they enforce the applicable law and regulations against Tesla. The MVC responded stating it

10

would "investigate and follow up as appropriate." NJCAR's counsel responded that the MVC's response was "vague and non-committal," and did not "confirm or repudiate" the 2018 settlement agreement it had reached with Tesla and that NJCAR would proceed to litigate the matter. Counsel sent a similar correspondence to the DCA.

On September 18, 2019, NJCAR filed a complaint in lieu of prerogative writs in the Law Division, and on October 28, 2019, NJCAR filed an amended complaint. The amended complaint contained three counts, namely, a claim against the MVC and its director alleging they failed to enforce the motor vehicle franchise and dealer licensing laws; a claim against the DCA and its director for failure to enforce consumer protections laws; and a claim against the State defendants for violations of the guarantee clause under the New Jersey Constitution.

On October 25, 2019, the MVC issued a cease and desist order to Tesla. The order stated the MVC investigated Tesla's GSP location between July and September 2019 and found it breached the 2018 settlement agreement by:

> Representing to customers that vehicles may be purchased from the . . . [GSP] location, in violation of [p]aragraph [three] of the [s]ettlement [a]greement;

A-1429-19

Positioning sales personnel at the . . . [GSP] location, in violation of [p]aragraph [four] of the [s]ettlement [a]greement; and

The . . . [GSP] location does not have a sign, legible and visible to the public, stating that vehicles may not be purchased from that location, in violation of [p]aragraph [five] of the [s]ettlement [a]greement.

The order further stated Tesla violated N.J.A.C. 13:21-15.5(a)(13) to -15) because:

Tesla employees have assisted and offered to assist in the purchase of a motor vehicle from the . . . [GSP] location;

Tesla employees have assisted and offered to assist in the placement of orders for motor vehicles from the . . . [GSP] location;

Tesla has sales personnel at the . . . [GSP] location, speaking with potential customers and following up with those customers from a licensed Tesla location;

Tesla employees have represented that a vehicle can be purchased from the . . . [GSP] location;

Tesla employees have discussed pricing, availability and test drives from the . . . [GSP] location;

Tesla employees have represented that inventory is available for purchase and that a complete sale, including creation of an account, a test drive, financing, trade-in, and the design and ordering of a Tesla could be accomplished at the . . . [GSP] location using Tesla hardware as well as the customer's cell phone;

> There is a sign posted at the . . . [GSP] location advertising the sales price of a Tesla; and
>
> A motor vehicle may be purchased from the . . . [GSP] location using a machine-readable code displayed on the premises of the . . . [GSP] location.

The order required Tesla to "cease all activities and operations of any type" at the location, pay a $500 civil penalty, and ordered further operation of the location after the effective date would result in $1,000 civil penalties per day.

The parties entered into the December 2, 2019 consent order, which the Mercer Vicinage Assignment Judge entered transferring the matter to us. In January 2020, the State defendants filed a statement of items comprising the record. Shortly afterwards, NJCAR made an Open Public Records Act request to the MVC for "copies of all documents related to the application for a new car dealer license by Tesla . . . for" its Lawrence Township facility.

The MVC responded to the request by providing NJCAR with a copy of Tesla's October 15, 2019 application to relocate its Short Hills licensed location to Lawrence Township and all documentation of the MVC's investigation and licensure of the Lawrence Township location. NJCAR filed a motion to settle the record to include Tesla's application to relocate its Short Hills location, which we reserved for decision as a part of this appeal.

13

NJCAR raises the following points on appeal:

> I.   MVC'S FAILURE TO ENFORCE MOTOR VEHICLE FRANCHISE AND DEALER LICENSING LAWS IS ARBITRARY, CAPRICIOUS, AND UNREASONABLE AND VIOLATIVE OF EXPRESS LEGISLATIVE POLICIES.
>
> II.   DCA'S FAILURE TO ENFORCE CONSUMER PROTECTION LAWS AGAINST TESLA IS ARBITRARY, CAPRICIOUS, AND UNREASONABLE.
>
> III.   THE STATE RESPONDENTS' SELECTIVE ENFORCEMENT OF STATUTES AND REGULATIONS CONSTITUTES A VIOLATION OF THE GUARANTEE CLAUSE OF THE NEW JERSEY CONSTITUTION.
>
> IV.   AT THE VERY LEAST, THERE ARE FACT ISSUES WHICH REQUIRE THAT THIS MATTER BE REMANDED FOR DISCOVERY AND FACTUAL DETERMINATIONS.

I.

The State defendants and Tesla argue that NJCAR lacks standing to challenge their discretionary enforcement actions. In response, NJCAR contends, however, that respondents have advanced an overly restrictive interpretation of New Jersey law on standing, particularly associational standing. Having considered the parties' arguments, we conclude NJCAR lacks standing to pursue its claims and its complaint must be dismissed.

A-1429-19

II.

We typically embrace "a liberal approach to standing to seek review of administrative actions . . . in this state [which] is less rigorous than the federal standing requirements." In re Camden Cnty., 170 N.J. 439, 448 (2002). However, "[t]o possess standing in a case, a party must present a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and a substantial likelihood that the party will suffer harm in the event of an unfavorable decision." Id. at 449 (citing Chamber of Com. v. N.J. Election Law Enf't Comm'n, 82 N.J. 57, 67-69 (1980)). "Although the mere assertion of a public interest . . . ordinarily is not sufficient to acquire standing to seek judicial review of an administrative agency decision, the existence of a financial interest that is affected directly by the agency action will confer standing on a" third party. Id. at 448.

In In re Mason, 134 N.J. Super. 500, 502 (App. Div. 1975), the "Solid Waste Industry Council[ (SWIC)], an association of solid waste collectors, appeal[ed] from a determination of the Board of Public Utility Commissioners [(BPU)] . . . granting a certificate of public convenience and necessity for solid

15

waste collection" to an individual. The BPU denied SWIC's motion to intervene. Ibid. We affirmed the BPU's decision noting "SWIC is simply an organization of solid waste collectors[ and a]s distinguished from its members, it has no direct or specific interest in the proceedings. Any interest it may have appears to be a general one and derived from that of the individual members." Id. at 505-06. Moreover, we also noted SWIC's members did not have "a substantial or specific interest" in the matter. Id. at 506.

Similarly, NJCAR, which according to its complaint is "a [s]tate-wide trade association that represents New Jersey's franchised new car and truck retailers" does not represent the public or the public's interest. Under the facts presented, NJCAR has not shown it has a sufficient stake in the outcome of the agency action, a real adverseness with respect to the subject matter, and a substantial likelihood that it will suffer harm as a result of MVC or DCA's enforcement vis-à-vis Tesla.

We also reject NJCAR's argument that the State defendants selectively enforced the law only against its members, but not Tesla. Our Supreme Court has stated that a party alleging an unconstitutional enforcement of the law

> must show both a discriminatory effect and a motivating discriminatory purpose. [Wayte v. United States, 470 U.S. 598, 608 (1985).] The conscious exercise of some selectivity in enforcement is not a

> constitutional violation unless the decision to prosecute is based upon an unjustifiable standard such as . . . [an] arbitrary classification.
>
> [Twp. of Pennsauken v. Schad, 160 N.J. 156, 183 (1999).]

See also State v. Di Frisco, 118 N.J. 253, 266 (1990) (noting "[t]he burden in such cases is heavy.").

The record simply does not support NJCAR's contention of selective enforcement by the State defendants. As the State defendants note, NJCAR does not present a single instance in which they cited one of its members for conduct that Tesla engaged in. The objective evidence before us reveals Tesla was the subject of rigorous enforcement efforts by the State.

The State defendants argue that decisions as to whether and how to take enforcement actions are matters of agency discretion and the court may not compel them to take such discretionary actions. Tesla joins in this argument. In response, NJCAR contends that while mandamus relief is generally only available to compel a State agency to perform a ministerial act, it may compel the performance of a discretionary act where the agency's decisions are arbitrary, capricious, or unreasonable.

We may grant a writ of mandamus, which "direct[s] government officials to carry out required ministerial duties." Caporusso v. N.J. Dep't of Health &

17

Senior Servs., 434 N.J. Super. 88, 100 (App. Div. 2014). "[I]t is well-settled this court's 'jurisdiction extends not only to State agency action, but also agency inaction.'" Id. at 101 (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 3.1 on R. 2:2-3(a)(2) (2014)). However, this authority "is exercised sparingly, as courts are ill-equipped to micromanage an agency's activities." Ibid. (citing Sod Farm Assocs. v. Twp. of Springfield, 366 N.J. Super. 116, 130 n.10 (App. Div. 2004)).

"The exceptional remedy of '[m]andamus is usually appropriate only where the right to performance of a ministerial duty is clear and certain.'" Failure to Adopt 861 CPT Codes, 358 N.J. Super. 135, 149 (App. Div. 2003) (quoting Matter of Failure, 336 N.J. Super. at 262). Ministerial duties "do not require an evaluative judgment in the exercise of discretion," Caporusso, 434 N.J. Super. at 101, and instead are "absolutely certain and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode and occasion of its performance with such certainty that nothing remains for judgment or discretion." Id. at 102 (quoting Ivy Hill Park Apartments v. N.J. Prop. Liab. Ins. Guar. Ass'n, 221 N.J. Super. 131, 140 (App. Div. 1987)).

NJCAR has not shown that the enforcement actions of the MVC were arbitrary, capricious, or unreasonable.  It also has not shown that the DCA improperly failed to take steps to enforce the CFA and the regulations adopted pursuant to the CFA.  NJCAR's arguments on these issues lack sufficient merit to warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

III.

Finally, we reject NJCAR's assertion that the "dearth of an administrative record presented by the State in its [s]tatement of [i]tems [comprising the record on appeal]" requires a remand to an administrative law judge (ALJ) under Rule 2:5-5(b), which states:

> At any time during the pendency of an appeal from a state administrative agency, if it appears that evidence unadduced in the proceedings below may be material to the issues on appeal, the appellate court . . . may order . . . that the record on appeal be supplemented by the taking of additional evidence and the making of findings of fact thereon by the agency below or, in exceptional instances, by a judge of the Superior Court especially designated for that purpose.

Our Supreme Court has held,

> in the context of an application to supplement the record from an appeal from an administrative agency pursuant to [Rule] 2:5-5(b), . . . the factors to be considered on a motion to supplement include (1) whether at the time of the hearing or trial, the applicant knew of the information he or she now seeks to include

19

in the record, and (2) if the evidence were included, whether it is likely to affect the outcome.

[Liberty Surplus Ins. v. Nowell Amoroso, P.A., 189 N.J. 436, 452-53 (2007) (citing In re Gastman, 147 N.J. Super. 101, 114 (App. Div. 1997)).]

We decline NJCAR's invitation to remand the matter to an ALJ because the salient facts are not in dispute and it has not identified what information is lacking from the record. We are also unconvinced this information would affect the outcome given NJCAR's lack of standing.

For similar reasons, we deny NJCAR's motion to settle the record because the information it seeks to include in the record pertains to the relocation of the Tesla's Short Hills licensed facility to its Lawrence Township facility, which would not constitute a violation of N.J.S.A. 56:10-27.1, Tesla's 2018 settlement with the MVC, or the CFA. Therefore, this information would not affect the outcome.

Dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1429-19